**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                    Elisabeth A. Shumaker
Clerk                                                                      Chief Deputy Clerk

January 21, 1998


**TO:**   ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:**   96-4100, *In re: Hal Taylor*
          January 12, 1998


    Please be advised of the following correction to the captioned decision:

    On the cover page of the opinion, counsel for the appellant, Julia W. Taylor, should read as follows:

J. Kent Holland of Anderson & Holland, Salt Lake City, Utah, and Brenda L. Flanders of Flanders & Associates, Salt Lake City, Utah, for Appellant.

    A copy of the corrected cover page is attached for your convenience.

                              Very truly yours,

                              Patrick Fisher, Clerk


                              Keith Nelson
                              Deputy Clerk



encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 12 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

_____

In re:  HAL TAYLOR,

       Debtor.

---------------------------------------------

JULIA W. TAYLOR,

       Appellant,

   v.

STEPHEN W. RUPP, Trustee,

       Appellee.

No. 96-4100

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 95-CV-961-C)

_____

J. Kent Holland of Anderson & Holland, Salt Lake City, Utah, and Brenda L. Flanders of Flanders & Associates, Salt Lake City, Utah, for Appellant.

Jeffrey E. Nelson of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, for Appellee.

_____

Before MURPHY and LOGAN, Circuit Judges, and MILES-LaGRANGE, District Judge.[*]

LOGAN, Circuit Judge.

Julia W. Taylor (Julia) appeals the district court's judgment imposing a trust for the benefit of creditors upon real and personal property titled in her name. In an earlier proceeding, her husband, Harold Taylor (Harold), was denied discharge in bankruptcy on the basis that he had willfully and fraudulently omitted material information from his statements and schedules. Steven W. Rupp, bankruptcy trustee, then brought this proceeding against Julia, claiming that Harold's transfers to Julia of the assets at issue here were void or voidable as fraudulent conveyances or, in the alternative, that Harold had equitable interests in them such that the court should impose a constructive or resulting trust.

The bankruptcy judge determined that Harold retained a one-half equitable interest in the couple's Park City home even though he had conveyed his share of a joint tenancy title to Julia seven years before when he was solvent, and that this equitable interest was part of Harold's bankruptcy estate. The judge imposed a resulting and constructive trust for the benefit of creditors on an undivided one-

[*] The Honorable Vicki Miles-LaGrange, United States District Judge for the Western District of Oklahoma, sitting by designation.

half interest in the home.  The judge also determined that the bankruptcy estate was entitled to a money judgment against Julia for $5,743.50, one-half the allowance for a jointly owned Jeep the couple traded in on another, which they titled in Julia's name alone, about two weeks before Harold filed bankruptcy.  The district court summarily affirmed.[1]  Julia has appealed both determinations.

I

We have no problem affirming the judgment respecting the Jeep transaction.  In 1991 the Taylors purchased a 1990 Jeep and titled it jointly.  In June 1992, seventeen days before Harold filed for bankruptcy, they traded that Jeep in as partial payment, receiving $11,487 credit, for a new 1993 Jeep Grand Cherokee titled only to Julia.

Under both the Uniform Fraudulent Transfer Act, Utah Code Ann. §§ 25-6-1 through -13 (1988), and the Bankruptcy Code, 11 U.S.C. § 548(a)(1), when a person has transferred his assets with actual intent to hinder, delay or defraud his creditors, such a transfer can be avoided.  Whether the trustee must show actual fraud by a clear and convincing standard, see, e.g., Glinka v. Bank of Vermont (In re Kelton Motors, Inc.), 130 B.R. 170, 179 (Bankr. D. Vt. 1991), or only by a preponderance of the evidence, see Thompson v. Jonovich (In re Food & Fibre

---

[1]  Because the district court simply adopted the bankruptcy judge's findings and conclusions, throughout this opinion we refer to the bankruptcy judge's decision as the judgment being reviewed.

Protection, Ltd.), 168 B.R. 408, 418 (Bankr. D. Az. 1994), we need not decide because, as the court found, the trustee's evidence met the higher standard.

The Uniform Fraudulent Transfer Act includes a nonexclusive list of "badges of fraud" that may be considered as actual evidence of a debtor's intent to defraud. The factors are:

> (a) the transfer or obligation was to an insider;
> (b) the debtor retained possession or control of the property transferred after the transfer;
> (c) the transfer or obligation was disclosed or concealed;
> (d) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (e) the transfer was of substantially all the debtor's assets;
> (f) the debtor absconded;
> (g) the debtor removed or concealed assets;
> (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (j) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (k) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Utah Code Ann. § 25-6-5(2) (1988). When one or more of these badges are present fraudulent intent can be inferred. Likewise, under 11 U.S.C. § 548(a)(1) bankruptcy courts consider similar badges of fraud as evidence of actual fraudulent intent. See Max Sugarman Funeral Homes, Inc. v. A.D.B. Investors, 926 F.2d 1248, 1254 (1st Cir. 1991).

- 4 -

As the bankruptcy judge pointed out, in this case there are several badges of fraud. Harold transferred his half interest in the 1990 Jeep to an insider, his wife, two weeks before declaring himself insolvent. In his bankruptcy filing, Harold listed Lynn Knight as his only creditor. Knight had sued Harold in June 1990 in relation to a real estate transaction, and received a $36,879 judgment against him, on which she had pursued a writ of execution in December 1991. The Jeep title transfer occurred after that judgment and only a few days before Harold's filing as a bankrupt. Further, Harold concealed the transfer when he did not disclose it in his statement of financial affairs or list it as an asset in his schedule when he took bankruptcy.

Julia claims that the 1990 Jeep was improperly titled, that it had been purchased with a trade-in from a vehicle which should have been titled in her name, and that the two were merely correcting this error when they purchased the 1993 Jeep. The bankruptcy judge rejected these arguments and also Julia's argument that she used her money to purchase both of the vehicles. The record supports the bankruptcy judge's determination on this issue.

II

A

We have much more difficulty with the findings and conclusions respecting the real estate transfer.

Harold and Julia Taylor purchased their Park City home in November 1973 for approximately $70,000, which they financed by paying $14,000 down and taking a mortgage of approximately $56,000. They took title to the home in joint tenancy. In 1982 Harold suffered a heart attack. In May 1985 he executed and recorded a warranty deed conveying his interest in the home to Julia, so that thereafter it was titled solely in her name. Shortly after the 1985 conveyance to Julia they retired the remaining $25,000 mortgage, with funds which the bankruptcy judge stated "may have come from an inheritance received by" Julia. Appellant's App. 26.[2]

The bankruptcy judge found that until 1985 Harold's income from his real estate business was the primary source for the mortgage payments. The court also found that, although until around 1985 Harold earned a much higher income than Julia, they treated the marriage as a financial partnership and considered income earned by either spouse as part of their joint family funds. Both continued living in the home, sharing the expenses of taxes, utilities, and insurance--with many payments made by checks signed by Harold.

From 1986 to 1989 Harold's income from his real estate business declined dramatically, partly because he was serving as mayor of Park City. During this

---

[2] The trustee's complaint appears to acknowledge that Julia paid off the mortgage. App. of Plaintiff/Appellee at 3.

time Julia's income increased. In 1989 Harold suffered a stroke and ceased earning any income. He began receiving social security benefits in 1992. In March 1989, the Taylors cosigned a $60,000 line of credit secured by the Park City home and utilized at least $29,000 of this line of credit for living expenses. Harold did not include any equitable interest in the Park City home in his schedule of assets filed in the bankruptcy proceeding.

## B

Julia first argues that the statute of limitations barred the trustee's equitable claims against the Park City home. The trustee filed suit in March 1994. The applicable Utah statute of limitations on equitable claims is four years. See Utah Code Annotated § 78-12-25(3) (four-year statute of limitations on actions "for relief not otherwise provided for by law"); see also American Tierra Corp. v. City of West Jordan, 840 P.2d 757, 760-61 (Utah 1992) (applying § 78-12-25(3) to equity action). The bankruptcy judge determined that the four-year statute began to run in July 1992, when Harold filed his bankruptcy schedules and did not claim an equitable interest in the Park City home. She said this failure to list his equitable interest was the first time Harold took a position contrary to the equitable interest claimed by the plaintiffs. See Carnesecca v. Carnesecca, 572 P.2d 708, 711 (Utah 1977). Julia counters that the statute began to run when Harold transferred his interest and recorded the deed in May 1985. She quotes

from Baker v. Patee, 684 P.2d 632 (Utah 1984), that "[n]o resulting trust could come into being, as the plaintiff did not prove that [the grantor] intended anything but an unconditional conveyance of her property. . . .  The date of delivery of the deed set the period of limitations in motion and those actions were barred years before [the grantor's] death." Id. at 638.

In Baker, the Utah Supreme Court affirmed the district court's decision because it found that the evidence did not support a resulting trust.  "Had [a resulting trust] been the finding in the instant case, the statute of limitations would not begin to run until the trustees affirmatively repudiated the trust. Therefore this action would not be barred."  684 P.2d at 635 (citing Parks v. Zions First Nat'l Bank, 673 P.2d 590 (Utah 1983)).  Baker indicates that the statute of limitations is intertwined with the substantive question whether Harold had an equitable interest in the home.  If the bankruptcy judge correctly determined that Harold retained an equitable interest, under Utah law the statute of limitations would not have run until he took an action to repudiate that interest when he filed his bankruptcy schedules.  If, however, Harold did not retain any equitable interest, then the trustee would not be entitled to recover in any event. We thus must review the merits of the case.

C

The bankruptcy judge's opinion imposed "both a resulting trust . . . and a constructive trust" on the undivided one-half equitable interest she found Harold to own in the Park City home titled in Julia's name. The judge reasoned as follows:

> [Harold] Taylor had an equitable interest in the Park City Home at the time he transferred legal title to [Julia] and he continued to have an equitable interest in the property up to and through the time his bankruptcy petition was filed. [Harold's] equitable interest is evidenced by his original purchase of the Park City Home in 1973 and his continuing payments on the underlying mortgage debt. The Park City Home was purchased and the transfer was made at times when [he] had substantial income. When the Taylors later obtained the $60,000 Line of Credit in March of 1989, both [Harold] and [Julia] were liable on the loan. Subsequently [Harold] made payments on the Line of Credit and paid taxes, insurance and utilities on the Park City Home.
>
> The Taylors testified that they transferred legal title because of estate planning and inheritance tax concerns after [Harold's] heart attack. However, the fact that [Harold] never intended to convey the full beneficial interest in the Park City Home to [Julia] as a gift is evidenced by the Taylors' conduct after [Harold] transferred legal title to [Julia] in 1985. The Taylors treated the Park City Home as their joint marital property and their family home throughout their marriage, both before and after [Harold] transferred legal title to the property to [Julia].

Appellant's App. 49-50. The judge found, however, that there was no evidence Harold was insolvent when he transferred title to the Park City home to Julia or that the transfer was made in anticipation of litigation. Id. at 39. She found that Harold received "some consideration for the transfer because [Julia] paid off the

$25,000 mortgage remaining . . . an obligation for which [Harold] would have been jointly liable." Id. The judge also found that Harold "is a real estate broker by profession and understands real estate transactions including the nature of equitable, as opposed to legal, interests in property." Id. at 22.

We may not set aside the bankruptcy judge's fact findings unless they are clearly erroneous. Fed. R. Civ. P. 52(a). The appellate record does not contain a transcript of the testimony presented to the judge. But the apparently undisputed testimony was that Harold intentionally transferred title to the home to Julia "because of estate planning and inheritance tax concerns after [Harold's] heart attack." Appellant's App. 49. Therefore, the judge's finding that Harold "intended" to retain an equitable one-half interest was the judge's inference from the other undisputed facts.

In these circumstances we believe the bankruptcy judge's finding that Harold retained an equitable undivided one-half interest in the home is not a fact finding but a legal conclusion that we review de novo. "Resolution of this issue requires a determination of whether the facts satisfy the proper legal standard, a mixed question of law and fact." Jobin v. McKay (In re M & L Business Machine Co., Inc.), 84 F.3d 1330, 1338 (10th Cir.), cert. denied, 117 S. Ct. 608 (1996). See Hall v. Vance, 887 F.2d 1041, 1043 (10th Cir. 1989) ("This court . . . may exercise de novo review over the bankruptcy court's conclusions of law.").

A bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1). The existence and extent of such an interest is determined by state law, in this case the law of Utah. See, e.g., United States v. Rodgers, 461 U.S. 677, 683, 690-91 (1983). The bankruptcy judge, in imposing both a resulting and constructive trust in favor of Harold which his creditors could reach relied principally upon Parks v. Zions First National Bank, 673 P.2d 590 (Utah 1983). We turn our attention first to whether the bankruptcy judge correctly imposed a "resulting trust."

D

The Parks court indicated that a resulting trust requires an intent to retain a beneficial interest, and cited Restatement (Second) of Trusts § 442 (1959) which provides that

> Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property.

673 P.2d at 598 (quoting Restatement (Second) of Trusts § 442) (emphasis added). Restatement § 442 thus reverses the usual presumption that when one person provides the purchase money for property but another takes legal title to

the property, it is intended that the legal owner holds the property for the benefit of the one providing the purchase price. The Parks court rejected a claim of resulting trust because it found no manifestation that the husband there intended to retain a beneficial interest in properties to which he contributed money and labor but which were titled in his wife's name.

In the instant case the bankruptcy judge found that Harold was a real estate broker who "understands real estate transactions." Appellant's App. 22. She acknowledged that the Taylors "testified that they transferred legal title because of estate planning and inheritance tax concerns after [Harold's] heart attack." Id. at 49. Yet she found Harold never intended to convey the entire beneficial interest because of his later conduct: living on the premises, paying bills, cosigning a letter of credit. In reviewing this determination we must keep in mind that the proof required to impose a resulting trust "must be strong, clear, and convincing, such as to leave no doubt of the existence of the trust," Chambers v. Emery, 45 Pac. 192, 195 (Utah 1896), and that it is the intention "at the time of the transfer and not at some subsequent time which determines whether a resulting trust arises." Restatement (Second) of Trusts § 443 comment a. So viewed, there is no basis for the bankruptcy judge's determination that the facts rebut the presumption that when a husband pays (or here, signs over his interest) for property that is placed in his wife's name, he intends a gift. In fact, Harold's

act of conveying his interest was more deliberate because he and Julia already held title to their home jointly. The Taylors' explanation--that Harold had seen his brother's widow experience difficulty selling a home that had been co-owned, that he had heart trouble and wanted to ensure Julia would have the home if he died--while perhaps not a model of legal reasoning must have been discounted for the judge to have reached her conclusion.

The bankruptcy judge appears to have adopted a per se rule that when a husband conveys to his wife his interest in the home but intends to continue to reside there and help pay real estate taxes, insurance, and other household bills that accrue, he intends to continue to hold a fifty percent beneficial interest in the property. As a practical matter such a rule would prevent transfers of title to the home between spouses to accomplish such objectives as avoiding probate and arranging the two estates to take advantage of the estate and inheritance tax laws exemptions. See 26 U.S.C. §§ 2001(c), 2010(a).

We are satisfied Harold's intention to continue to live with his wife on the premises and to pay a portion of the bills incurred during that occupancy does not establish clear and convincing proof of his intention to retain an ownership interest in property that he conveyed to his wife for estate planning purposes. Thus, we reject the bankruptcy judge's conclusions to the contrary.

E

We turn next to whether the bankruptcy judge correctly imposed a "constructive trust." "A constructive trust is imposed not because of the intention of the parties but because the person holding title to property would profit by a wrong or would be unjustly enriched if [s]he were permitted to keep the property. A constructive trust, unlike an express or resulting trust is remedial in character." Restatement (Second) of Trusts at 326.

The Parks court noted that constructive trusts are equitable remedies imposed for a variety of circumstances; "[a]n attempt to define or describe a constructive trust would be inadequate because such definition or description would be too narrow in its scope and fail to include important types of constructive trusts." 673 P.2d at 597 (quotation, citation, and footnote omitted). Nevertheless, the circumstances requiring imposition of a constructive trust must be found to exist by "clear and convincing evidence." Nielson v. Rasmussen, 558 P.2d 511, 513 (Utah 1976). We also must remember that we view the situation from Harold's position--not his creditor's--to determine whether it would be a wrong to Harold to let Julia keep the property. The bankruptcy judge already had found Harold transferred the property while he was solvent and not in anticipation of litigation. Appellant's App. 39. The trustee here stands in Harold's shoes in claiming ownership of an equitable half of the real estate.

- 14 -

Parks, heavily relied upon by the bankruptcy judge and the trustee, is quite distinguishable from the case before us. In Parks, a husband and wife accumulated significant real estate holdings and made improvements on them during a long-term marriage. The husband was employed throughout the marriage and the wife for the most part was not; they both contributed labor in maintaining and improving the properties. She did the bookkeeping and kept the accounts; and all of the property eventually was titled in her name alone. The wife died; her will left her husband only a conditional life estate in a farm house in which they had lived and a small monthly payment. These benefits terminated if he remarried. The will designated a children's hospital as the ultimate beneficiary of the testamentary trust assets. The husband did not elect against the will or otherwise timely challenge it, but obtained relief by the court's imposition of a constructive trust.

We read Parks as based on the Restatement of Restitution § 160 (1937) idea of unjust enrichment and as such it is imminently reasonable. The court there prevented an injustice by applying equitable remedies where no trust intent existed. In contrast, in the case before us the supposed equitable owner is the one who made the gift, and he manifested no intent that his wife not have the legal and equitable title to the home. The fact that he paid real estate taxes, insurance and utility bills could certainly be seen as his contributing to the expenses in

return for living in the home which she owned. Indeed, a Utah statute imposes on both husband and wife "[t]he expenses of the family," Utah Code Ann. § 30-2-9; many of these payments would surely fall into that category.

The bankruptcy court seemed to rely to some extent on the fact that Harold co-signed the line of credit; but any financial institution loaning money on the security of a home would require a consent or guarantee by a spouse of the title holder because of the spousal elective share and homestead exemptions law. See Utah Constitution, Art. XXII § 1, and Utah Code Ann. §§ 75-2-201, 75-2-202, 75-2-401, 78-23-3, 78-23-4. There were no "badges of fraud" in this case. At the time of the transfer the couple was solvent, and the district court found there was no indication that they were not paying their debts. In contrast, in Parks, a man who worked hard all his life and contributed quite substantially to the property that was accumulated in his wife's name would have been left with virtually nothing unless the court imposed a constructive trust on some of that property.

The bankruptcy judge applied Parks too broadly, adopting a per se rule that would effectively nullify any attempt by one spouse to transfer all right, title and interest in a home in which he or she continues to reside, at least if the grantor continues to pay any costs of the occupancy. We believe that is not the law of Utah. Parks should not be read to eviscerate such plans where a "breadwinning" spouse continues to live in a home owned solely by the other spouse. We found

no other case remotely similar that imposed such a trust.[3]  We thus reverse the finding that Harold Taylor had an equitable one-half undivided share in the Park City property.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED for further proceedings consistent with this opinion.

---

[3]  The closest Utah case on the facts is <u>Mattes v. Olearain</u>, 759 P.2d 1177 (Utah App. 1988), in which a plaintiff testified she conveyed title to real estate to another to avoid her former husband's creditors.  The district court imposed a constructive trust in her favor.  Reversing, the Utah Court of Appeals, quoting a Utah Supreme Court case, stated:  "'Absent fraud, duress, mistake, or the like attributable to the grantee, a competent grantor will not be permitted to attack or impeach his own deed.'  Plaintiff testified she signed the deed of her own will, free of fraud, trick, or threat.  She alleged no mistake.  As we find no basis to disregard plaintiff's deed . . . the award of the [] property to plaintiff is reversed."  <u>Id.</u> at 1180.