In re Brian C. McGAVIN, Debtor,

Karen B. McGAVIN and McGavin
Investment Company,
Appellant,

v.

Roger G. SEGAL, Trustee, Appellee.

No. 2:97 CV 776K.

United States District Court,
D. Utah,
Central Division.

April 28, 1998.

Steven T Waterman, Valerie A. Longmire, Ray, Quinney & Nebeker, Salt Lake City, UT, for appellants.

Julie A. Bryan, Cohne, Rappaport & Segal, Salt Lake City, UT, for appellee.

## OPINION AND ORDER

KIMBALL, District Judge.

This matter is before the court on an appeal from the United States Bankruptcy

Court for the District of Utah, Central Division. The matter came on for hearing on April 23, 1998. Appellant was represented by Steven T. Waterman, and the Appellee was represented by Julie A. Bryan. Oral argument was heard and the court took the matter under advisement. The court has carefully considered all briefs and other materials submitted by the parties. The court has further considered the law and facts relevant to this appeal. Now being fully advised, the court enters the following Opinion and Order.

## BACKGROUND

This appeal arises out of an Order from the Bankruptcy Court dated July 25, 1997 in which the Bankruptcy Court imposed resulting trusts and constructive trusts on both real and personal property owned by Karen McGavin, the spouse of Brian McGavin, ("the Debtor"), and by McGavin Investment Company (MIC), a family partnership [1]. More specifically, the Debtor and Karen McGavin were married in 1978. At the time of their marriage they purchased a home using funds belonging to Karen McGavin. By Trustee's Deed dated May 6, 1983, the Debtor and Karen McGavin purchased, as joint tenants, an unimproved parcel of real property located at 7786 Prospector Drive, Salt Lake City, Utah, (the "Prospector Property"). Apparently the McGavins did not sell their prior home in order to fund the Prospector Property, rather they continued to live there until the prior home was turned into a duplex and used as rental property. The Debtor transferred legal title to the Prospector Property to Karen McGavin by Quit–Claim Deed dated November 30, 1983, recorded December 2, 1983. The Debtor received no consideration for the transfer. In 1984 the McGavins built a home on the Prospector lot. The Debtor has resided in the home at Prospector with Karen McGavin and the McGavin children since the completion of the home in 1985. Further, he continued to support the home, paying the mortgage, and at various times took out loans with Karen McGavin, using the Prospector Property as collateral. In 1988 a line of credit at Chase Manhattan

Bank of Utah with a limit of $100,000 was established jointly in the name of the Debtor and Karen McGavin and was secured by the Prospector Property. Based upon these findings the Bankruptcy Court found that the Debtor had an undivided equitable interest as a joint tenant in the Prospector Property and that the home constitutes property of the bankruptcy estate. Further, the Bankruptcy Court imposed a purchase money resulting trust on the home in favor of the Trustee and a constructive trust on the home in favor of the Trustee. Karen McGavin was ordered to turn over to the Trustee the property of the estate and a money judgment was entered against Karen McGavin in the amount of $195,000.00 representing a one-half interest in favor of the estate in and to the loans obtained by Karen McGavin after the filing of the Complaint in this matter wherein the Prospector Home was used as collateral.

In July 1982, the Debtor also started McGavin Investments Company, a family partnership consisting of the Debtor, as general partner, and his minor children, as limited partners. The Debtor asserted that MIC was created to accumulate wealth for his children. The Bankruptcy Court found that MIC was in fact used to pay for expenses ordinarily paid by parents, such as vacations and spa passes. Capital contributions to the partnership from the Debtor's children were gifts from the Debtor and Karen McGavin. These gifts included artwork and photography equipment, which at all times remained in the possession of the Debtor and were used and controlled by the Debtor. Based on these findings the Bankruptcy Court held that the Debtor has an equitable interest in the artwork and photography equipment which constitutes property of the bankruptcy estate. Further, the Bankruptcy Court imposed a constructive trust upon the artwork and photography equipment against MIC for the benefit of the creditors of the estate and also imposed a purchase money resulting trust upon the artwork and photography equipment. MIC was ordered to turn over the artwork and photography equipment to the Trustee.

1. The facts are set out in substantial detail by the Bankruptcy Court in the July 25, 1997 Order, Case No. 94PB–2447, and will not be fully repeated in this opinion.

## I. STANDARD OF REVIEW

In the review of orders from the Bankruptcy Court, there are three standards of review that may be applied. First, where the Bankruptcy Court is the finder of fact, the court's factual determinations will not be set aside unless they are "clearly erroneous." *See* Bankruptcy Rule 8013 and *Taylor v. I.R.S.*, 69 F.3d 411 (10th Cir.1995). A finding of fact is clearly erroneous only if the court has a definite and firm conviction that a mistake has been committed. *See In re Mama D'Angelo, Inc.*, 55 F.3d 552 (10th Cir.1995). Secondly, a bankruptcy court's ruling involving findings of fact may be overturned if the findings are premised on improper legal standards or on proper legal standards improperly applied. In these instances, the review of this court shall be *de novo*. *See In re Hedged–Investments Associates, Inc.*, 84 F.3d 1267 (10th Cir.1996). Lastly, this court will exercise *de novo* review over the Bankruptcy Court's conclusions of law. *See Hall v. Vance*, 887 F.2d 1041 (10th Cir.1989). Further, mixed questions of law and fact which involve primarily a consideration of legal principles are reviewed *de novo*. *See In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir.1988).

## II. DISCUSSION

The appellant in this case relies almost exclusively on the recent Tenth Circuit opinion in *Taylor v. Rupp*, 133 F.3d 1336 (10th Cir.1998), which also arose out of this District. In reversing the Bankruptcy Court's judgment imposing a trust for the benefit of the creditors upon real and personal property titled in the name of the debtor's spouse, the Tenth Circuit held that the Bankruptcy Court appeared to have adopted a "per se" rule "that when a husband conveys to his wife his interest in the home but intends to continue to reside there and help pay real estate taxes, insurance, and other household bills that accrue, he intends to continue to hold a fifty percent beneficial interest in the property." *Id.* at 1342. The Tenth Circuit went on to hold that "[a]s a practical matter such a rule would prevent transfers of title to the home between spouses to accomplish such objectives as avoiding probate and arranging the two estates to take advantage of the estate and inheritance tax laws exemptions." *Id.* The appellant in the matter at hand argues that the Bankruptcy Court in this matter, which was also the court that decided *Taylor*, adopted a per se rule in this case also by imposing constructive and resulting trusts and therefore must be reversed. This court disagrees.

In *Taylor* the Debtor transferred his interest in the home to his spouse after suffering a heart attack. The facts were undisputed that at the time of the transfer the Debtor was solvent and that the transfer occurred because of estate planning and inheritance tax concerns. The Bankruptcy Court found in *Taylor* that there was no evidence that the Debtor was "insolvent when he transferred title to the Park City home to Julia [the debtor's spouse], or that the transfer was made in anticipation of litigation." *Id.* at 1341. In reaching its conclusion that a trust should be imposed in *Taylor*, the Bankruptcy Court relied heavily on *Parks v. Zions First National Bank*, 673 P.2d 590 (Utah 1983). The *Parks* court imposed a constructive trust in order to preserve a surviving spouse's interest in property. In *Parks* the court prevented an injustice by applying equitable remedies where no trust intent existed. In *Taylor*, the Bankruptcy Court applied an equitable interest in the one who made the gift and who manifested no intent other than that the spouse have full legal and equitable title to the home. The Tenth Circuit ruled that this application of *Parks* was overly broad.

The appellant in this matter argues that the holding in *Taylor* should apply to the case at hand. She argues that because the McGavins both testified that their intent at the time the Prospector Property was transferred was that Karen McGavin would retain full legal and equitable interest in the property, that for the Bankruptcy Court to hold otherwise, proves that a per se rule is being applied. In other words, any time a debtor testifies that his or her intent was to transfer full equitable interest in the property to his or her spouse, that unless there is direct contradictory testimony that the debtor's intent at the time of the transfer was otherwise, it is improper for the court to find that

the debtor holds an equitable interest in the property. The appellant further argues that the court should review the Bankruptcy Court's decision under a *de novo* standard of review.

■ The appellant in this matter overlooks an important distinction between this case and the *Taylor* case. In *Taylor* the only testimony was that the transfer took place for estate planning purposes. The Bankruptcy Court found that the evidence on this point was undisputed and at no time did the Bankruptcy Court question the Debtor's intent at the time of the transfer. The evidence was undisputed that at the time of transfer the debtor intended that his wife hold full legal and equitable interest in the property and the Bankruptcy Court did not find otherwise. Instead, the Bankruptcy Court simply held that the Debtor retained an equitable interest in the property because he continued to reside in the home and pay expenses even though his intent at the time of the transfer was to give up his rights in the property. In the matter at hand the Bankruptcy Court heard five days of testimony. Although there was no direct testimony that the Debtor did not intend' for Karen McGavin to hold full legal and equitable interest in the Prospector Property, the Bankruptcy Court found that the testimony of the McGavin's intent was not credible. Specifically the Bankruptcy Court held as follows:

> The 1983 Quit–Claim Deed whereby the Debtor transferred his legal interest in the Building lot to Karen McGavin was consistent with the Debtor's alleged financial strategy of severing joint tenancy of real and personal property held by him and Karen McGavin. The Debtor maintained his ownership interest in MSR [2] but attempted to transfer his interest in real and personal property to Karen McGavin or MIC. The Debtor had a sophisticated understanding of the tax consequences and other economic benefits of severing joint tenancy between husband and wife and the advantages of creating a family limited partnership to provide estate and tax planning benefits.

The Court has carefully considered the evidence presented at trial to determine the Debtor's intent at the time he transferred his interest in the Building Lot to Karen McGavin, including Karen McGavin's dealings with the Building Lot and the Prospector Home, the Debtor's use of the property, both as a residence and, in multiple instances, as a source of collateral for a variety of loans used to enter into various personal and business transactions and the Debtor's control of financial decisions related to the Prospector Home. Based upon the totality of the facts and the credibility of the witnesses, the Court finds that the Debtor intended to transfer his one-half interest in the Building Lot to Karen McGavin for the sole purpose of maximizing tax and estate planning benefits. The Debtor never intended to transfer to Karen McGavin his ability to use or control his joint tenancy interest in the Building Lot or the Prospector Home built thereon, and he never intended that Karen McGavin should have sole ability to use and make decisions regarding the equity that accrued in the Building Lot and Prospector Home.

Bankruptcy Court's July 25, 1997 Findings of Fact and Conclusions of Law at 13 & 14.

■ As to the artwork and photography equipment the Bankruptcy Court found that:

> The evidence was clear that the artwork and the photography equipment was acquired with either the Debtor's services or income, that the Debtor did not intend when he transferred those items to MIC to relinquish his control or beneficial interest therein, and that he continued to use and enjoy the artwork and photography equipment. The evidence also proves that the Debtor intended that ownership be placed in MIC for the purpose of maximizing tax benefits. However, the Debtor never intended to relinquish his possession or control over the artwork or photography equipment and retained the beneficial use thereof.

---

**2.** MSR is McGavin, Siebenhaar & Reynolds which is the Debtor's corporation. The Debtor retained his interest in MSR at all times and MSR is not a party to this appeal.

*Id.* at 19. It is clear from the record below that the Bankruptcy Court did not apply a per se rule, but rather, that as the trier of fact the Bankruptcy Court made a determination, based upon the evidence presented and the credibility of the witnesses, that the Debtor's intent was to retain an interest in both the real and personal property at issue. The Bankruptcy Court did not apply a per se rule as was the case in *Taylor*, rather the Bankruptcy Court made a determination as to intent based upon the facts before it.[3] Based upon these findings the Bankruptcy Court imposed resulting and constructive trusts. This court will not disturb factual findings and conclusions of the Bankruptcy Court unless they are clearly erroneous. Therefore, it is hereby

ORDERED that the Judgment of the Bankruptcy Court is AFFIRMED.

**3.** The Bankruptcy Court also ordered that the Debtor's transfer of furniture and appliances located at the Prospector Home was void. This finding was based upon testimony that the transfer took place in 1989 after the Debtor was informed that he was about to be sued by Dr. Margaret Anne Schmitt. The Bankruptcy Court found that the purpose of the transfer was to protect assets from judgment rather than to complete the division of the McGavin's property as was testified to by the Debtor.