FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

September 14, 2020

Blaine F. Bates
Clerk

NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE ALL PHASE ROOFING AND CONSTRUCTION, LLC, | BAP No. WO-20-004 <br> BAP No. WO-20-005 |
| Debtor, | |
| IN RE RICKY SHARPTON, | |
| | Bankr. No. 17-12414 |
| Debtor. | Adv. No. 17-01070 |
| | Chapter 7 |
| RICKY SHARPTON, | |
| Appellant, | OPINION |
| v. | |
| SUSAN MANCHESTER, CHAPTER 7 TRUSTEE, | |
| Appellee. | |

_____

Appeal from the United States Bankruptcy Court
for the District of Western Oklahoma
_____

Submitted on the briefs.**

_____

\* This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion.  10th Cir. BAP L.R. 8026-6.

** The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr. P. 8019(b).  The case is therefore ordered submitted without oral argument.

_____

Before **ROMERO**, Chief Judge, **SOMERS**, and **JACOBVITZ**, Bankruptcy Judges.

_____

**ROMERO**, Chief Judge.

_____

"No harm, no foul" is a concept regularly used in certain sports to reflect a situation wherein a rule breach will not result in a penalty to the offending player because the opposing player was not adversely affected by the violation. Unfortunately for the Debtor/Appellant in this case, this concept does not have a parallel to the application of certain Bankruptcy Code sections.

The Debtor/Appellant, Ricky Sharpton ("Sharpton"), appeals judgments of the United States Bankruptcy Court for the Western District of Oklahoma. The first judgment determined he fraudulently transferred property pursuant to 11 U.S.C. § 548 as manager of a limited liability company to himself and the second denied Sharpton's chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (7).[1] For the reasons stated below, we AFFIRM the Bankruptcy Court's judgments.

**I.      Background & Procedural History**

       **a.      Business Operations & Bankruptcy Cases**

Sharpton owned and served as president of All Phase Roofing and Construction, LLC ("All Phase LLC"), an entity which performed roofing and construction services in Oklahoma. All Phase LLC operated out of Sharpton's mobile home, located at 3400 East

---

[1]      All future references to "Bankruptcy Code," "Code," or "§," refer to Title 11 of the United States Code.

Airport Road, Stillwater, Oklahoma. On July 2, 2013, Sharpton quitclaimed the real property upon which his home sits (the "Real Property") to All Phase LLC.

After being in business for just over two years, All Phase LLC borrowed $40,000 from BancFirst on October 4, 2014. As collateral for the loan, BancFirst received a mortgage against the Real Property as well as a security interest in All Phase LLC's inventory, accounts, and equipment. Sharpton also personally guaranteed the obligation to BancFirst.

Approximately two years later, All Phase LLC sought out additional loans, this time from Everest Business Funding ("Everest"). On October 26, 2016, All Phase LLC secured a loan of $50,000 in exchange for a $70,500 interest in the company's accounts receivable. Sharpton personally guaranteed the obligation and executed an affidavit of confession of judgment to Everest for $70,500 personally and on behalf of All Phase LLC.

The agreement between All Phase LLC and Everest required All Phase LLC to authorize its bank to permit Everest to retrieve a daily payment from the proceeds of All Phase LLC's receivables. Thereafter, on November 8, 2016, Everest funded the $50,000 loan. Shortly thereafter, All Phase LLC removed Everest's authorization to debit the bank account, preventing payment. All Phase LLC defaulted on its agreement with Everest on or about December 7, 2016. Upon filing Sharpton's affidavit of confession of judgment, Everest obtained a judgment against Sharpton and All Phase LLC in the amount of $76,218.94 on March 31, 2017.

After defaulting on the loan from Everest, Sharpton purported to cease doing business under the name All Phase LLC and to operate the same business under a sole proprietorship named All Phase Roofing Systems. On December 12, 2016, for no consideration, Sharpton caused All Phase LLC to transfer to himself its interest in the Real Property by quitclaim, title to a 2011 Ford F350 and a 2014 cargo trailer, equipment, and inventory.

Despite All Phase LLC's alleged cessation of business in December 2016 and its formal dissolution on February 27, 2018, Sharpton continued to use other equipment and materials still owned by the company, invoiced customers using All Phase LLC's letterhead, and collected All Phase LLC's outstanding receivables for his own account throughout 2017 and 2018. During this same period, Sharpton routinely withdrew or otherwise used funds from All Phase LLC's bank account for personal expenses. Between June 2016 and July 2017, Sharpton took in excess of $320,000 from All Phase LLC for his own use and benefit. Money continued to move in and out of All Phase LLC's bank accounts up to the time All Phase LLC commenced its bankruptcy case and for several months thereafter.

All Phase LLC filed a chapter 7 bankruptcy petition on June 18, 2017, signed by Sharpton, as All Phase LLC's president. All Phase LLC's bankruptcy schedules listed property, including inventory and materials, machinery and equipment, a 2014 Ford truck, a bank account, and accounts receivables. The schedules indicate there was no equity in any of All Phase LLC's assets. The schedules listed assets valued at $203,712.28, secured debts of $583,425.68, and unsecured debts of $350,103.39. All

4

Phase LLC's *Statement of Financial Affairs* listed the Real Property, the 2011 Ford F350, and the 2014 cargo trailer as property transferred to an insider within one year before filing the bankruptcy petition. All Phase LLC's Statement of Financial Affairs did not disclose any of the withdrawals or transfers from its bank account by and to Sharpton.

Sharpton filed his own personal chapter 7 bankruptcy petition on December 31, 2017. In his bankruptcy schedules, Sharpton listed the Real Property, and mobile home located on it, valued at $76,000; the 2011 Ford F350, valued at $5,348; and the 2014 cargo trailer, valued at $4,300. Sharpton's personal bankruptcy case also listed other assets purportedly transferred from All Phase LLC to Sharpton, such as the accounts receivable, inventory, machinery and equipment, and a claim against a contractor who owed All Phase LLC money. Sharpton's *Schedule D, Creditors Holding Secured Claims*, indicated BancFirst held liens against the Real Property in excess of its value. BancFirst and other creditors also asserted liens against personal property such as inventory, equipment, and accounts receivable, suggesting all Sharpton's assets lacked equity. The chapter 7 trustee filed an interim report indicating that none of Sharpton's estate's assets had any net value in excess of liens and then issued a report of no distribution on December 5, 2018.

### b. Fraudulent Transfer Claims

Susan Manchester ("Manchester"), was appointed the chapter 7 trustee in both bankruptcy cases. In her role as the Trustee in the All Phase LLC case, Manchester filed an adversary proceeding pursuant to § 548(a) alleging All Phase LLC fraudulently transferred its interest in the Real Property, the 2011 Ford F350, and the 2014 cargo

trailer (the "Transferred Property") to Sharpton within the two years before the petition date.[2] The All Phase Complaint also sought recovery of the property transferred to Sharpton for the benefit of All Phase LLC's bankruptcy estate pursuant to § 550.[3]

The Bankruptcy Court conducted a two-day trial on the fraudulent transfer complaint. At the trial, Sharpton testified he titled the Transferred Property in his name on the advice of his then bankruptcy counsel. Sharpton also admitted to withdrawing hundreds of thousands of dollars from All Phase LLC's bank accounts and using them for personal expenses such as gambling. Sharpton withdrew over $565,000 from All Phase LLC accounts in 2016. A substantial portion of the withdrawals were made at casinos and other gambling venues. He withdrew over $100,000 from All Phase Accounts in the first six months of 2017 for personal use. Sharpton withdrew over $320,000[4] of funds from All Phase LLC's bank account in the twelve-months prior to All Phase LLC's bankruptcy petition filed on June 18, 2017 and in the weeks following commencement of the case. Sharpton withdrew those funds while All Phase LLC was in serious financial trouble to

---

[2]    Manchester also sought recovery of transfers of additional property such as assets transferred after All Phase LLC's bankruptcy petition, including All Phase LLC's remaining inventory and equipment, bank account balance, and accounts receivables, Manchester did not include a claim for post-petition transfers pursuant to § 549. Nor did Manchester reference the pre-petition cash transfers in the All Phase Complaint. Accordingly, the Bankruptcy Court did not address whether those transfers were avoidable under § 548. However, as discussed below, the Bankruptcy Court considered these transfers as evidence of Sharpton's intent to hinder, delay or defraud creditors. *Manchester v. Sharpton (In re All Phase Roofing & Const., LLC)*, No. 17-01070-SAH, 2020 WL 374357, at *10-11 (Bankr. W.D. Okla. Jan. 17, 2020) (unpublished).
[3]    Appellant's App. at 546.
[4]    *In re All Phase Roofing & Const., LLC*, 2020 WL 374357, at *6 (derived from table of transfers).

the detriment of its creditors. Sharpton used a substantial portion of those funds at gambling venues. In addition to cash, Sharpton testified he used All Phase LLC's other assets as his own, repeatedly stating he and All Phase LLC were one and the same. These assets included miscellaneous machinery, equipment, and inventory valued in All Phase LLC's schedules at $77,800.

At the conclusion of the trial, the Bankruptcy Court found Sharpton to be a less than credible witness who had an inexplicable inability to recall events and, "at a minimum, did not have a thorough understanding of [Manchester's] claims against him."[5] Applying § 548(a) to the facts before it, the Bankruptcy Court concluded Manchester met her burden of proving Sharpton "caused All Phase LLC to transfer assets to himself with actual intent to hinder, delay, or defraud All Phase LLC's creditors."[6] The Bankruptcy Court relied on traditional badges of fraud and the totality of the circumstances to support the conclusion the Transferred Property was subject to avoidance pursuant to § 548(a)(1)(A). Specifically, the Bankruptcy Court held "the transfers were (i) of substantially all of All Phase LLC's assets (in the aggregate) (ii) to an insider (iii) at the time All Phase LLC was insolvent (iv) following default on a debt with respect to which [Sharpton] had signed a confession of judgment."[7]

In assessing Sharpton's intent with respect to the transfers of the Transferred Property and other assets, the Bankruptcy Court also considered Sharpton's general

---

[5]     *Id.* at *8.
[6]     *Id.* at *16.
[7]     *Id.* at 14.

pattern of removing and dissipating at gambling venues All Phase LLC's assets that could have been paid to creditors.

The Bankruptcy Court rejected Sharpton's reliance on the advice of counsel defense, finding it incredibly difficult to believe that Sharpton's then counsel, who is now deceased, would have given him the advice on which Sharpton claims to have relied.

Finally, the Bankruptcy Court rejected Sharpton's assertion that he did not intend to hinder, delay or defraud creditors because he believed there was no difference between himself and All Phase LLC and because All Phase LLC's assets were fully encumbered. The Bankruptcy Court found that Sharpton's asserted belief that there was no difference between himself and All Phase LLC was belied by his ceasing to doing business as All Phase LLC in December 2016 but continuing to operate the same business thereafter as a sole proprietorship. The Bankruptcy Court found further that Sharpton took these actions, which included the transfers of the Transferred Property, and formally dissolved All Phase LLC, with the intent to hinder or delay All Phase LLC's unsecured creditors from reaching the All Phase LLC assets Sharpton used to produce income, even if all of All Phase LLC's assets were fully encumbered.

Despite concluding Sharpton made the transfers with the intent to hinder, delay, or defraud creditors of All Phase LLC, the Bankruptcy Court denied Manchester's request for recovery pursuant to § 550 because the Transferred Property lacked any equity that

8

would be beneficial to the bankruptcy estate.[8] Therefore, the Bankruptcy Court concluded "it would be pointless to require [Sharpton] to return the assets . . . as the estate has no equity in the assets 'and the return would not benefit the bankruptcy estate and would be a waste of judicial and estate resources.'"[9] Accordingly, the Bankruptcy Court entered judgment for Manchester on the § 548 claim and for Sharpton on the § 550 claim.[10]

### c. Denial of Discharge

Manchester also filed an adversary proceeding in Sharpton's personal bankruptcy case, seeking denial of Sharpton's discharge pursuant to § 727(a)(2) and (a)(7) and seeking judgment that the debts owed by Sharpton to All Phase LLC were nondischargeable under § 523(a)(2) as debts obtained by fraud. The Bankruptcy Court conducted a trial of the § 727 and § 523 claims simultaneously with its trial of the All Phase fraudulent conveyance complaint. Applying the same and additional evidence, the Bankruptcy Court found the numerous badges of fraud supported the inference Sharpton acted with fraudulent intent pursuant to § 727(a)(2). The Bankruptcy Court described the case as "a textbook case of an insider causing an entity to make fraudulent transfers for his benefit."[11] Accordingly, the Bankruptcy Court denied Sharpton's discharge pursuant

---

[8]    The Bankruptcy Court found there were numerous creditors claiming liens on all All Phase LLC's assets, as listed in *Schedule D*. Manchester did not attempt to avoid any of the liens.

[9]    *In re All Phase Roofing & Constr., LLC*, 2020 WL 374357, at *17.

[10]    Sharpton filed a counterclaim requesting an order requiring abandonment of the estate's interest in Sharpton's property. The Bankruptcy Court dismissed the claim because pursuant to § 554, a request for abandonment must be brought by motion.

[11]    *Manchester v. Sharpton (In re Sharpton)*, No. 18-01038-SAH, 2020 WL 373097, at *11 (Bankr. W.D. Okla. Jan. 17, 2020).

to § 727(a)(7) by way of § 727(a)(2). Resolving the § 523(a)(2) dischargeability claim, the Bankruptcy Court held Manchester was not entitled to have a debt determined nondischargeable because the estate did not establish liability for recovery pursuant to § 550.

### d. Appeal.

While the Bankruptcy Court conducted a trial on both the fraudulent transfer complaint and the discharge/dischargeability complaint simultaneously, the Court issued findings of fact and conclusions of law separately in each adversary proceeding. Sharpton filed separate appeals of the Bankruptcy Court's orders issued in each adversary proceeding. As the appeals involve findings of fact made from a joint trial on both complaints, we review both orders disposing of the adversary proceedings concurrently.

## II. Jurisdiction

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the Tenth Circuit."[12] No party elected to have this appeal heard by the United States District Court for the Western District of Oklahoma; thus, the parties have consented to our review.

This Court has jurisdiction over the appeals of final judgments, orders, and decrees.[13] The disposition of an adversary proceeding is a final order or judgment for

---

[12]     *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C. § 158(b)(1), (c)(1) and Fed. R. Bankr. P. 8002).

[13]     28 U.S.C. § 158(a)(1).

purposes of appellate review.[14] The Bankruptcy Court's findings of fact and conclusions

of law finally disposed of both adversary complaints considered in these appeals.

Accordingly, we have jurisdiction pursuant to 28 U.S.C. § 158.

## III.    Standard of Review

The Bankruptcy Court's decision to deny Sharpton's discharge pursuant to

§ 727(a)(2) and (a)(7) rests on its findings that Sharpton intended to hinder, delay, or

defraud creditors by transferring All Phase LLC's property in violation of § 548(a)(1)(A).

Accordingly, Sharpton asserts the Bankruptcy Court erred in determining he acted with

fraudulent intent in making the transfers. A debtor's intent is a factual finding reviewed

under the clearly erroneous standard.[15] "A finding of fact is clearly erroneous if it is

without factual support in the record or if, after reviewing all of the evidence, we are left

with the definite and firm conviction that a mistake has been made."[16]

"A decision whether to grant or deny a discharge [pursuant to § 727(a)] is in the

sound discretion of the bankruptcy court, and a bankruptcy court's denial of discharge is

therefore reviewed for abuse of discretion."[17] A trial court "abuses its discretion when it

---

[14]     *Hook v. Manzanares, (In Hook)*, 391 B.R. 211, 2008 WL 2663370, at *2 (10th Cir. BAP July 8, 2008) (unpublished) (first citing 28 U.S.C. § 158(a)(1) & (c)(1); Fed. R. Bankr. P. 8001–8002; 10th Cir. BAP L.R. 8001–1, and then citing *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712 (1996) (order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'")).
[15]     *Holaday v. Seay (In re Seay)*, 215 B.R. 780, 788 (10th Cir. BAP 1997) (quoting *Banker v. Mereshian (In re Mereshian)*, 200 B.R. 342, 345 (9th Cir. BAP 1996)).
[16]     *In re Miniscribe Corp.*, 309 F.3d 1234, 1240 (10th Cir. 2002) (quoting *Conoco, Inc. v. Styler (In re Peterson Distrib., Inc.)*, 82 F.3d 956, 959 (10th Cir. 1996)).
[17]     *Wagner v. Wagner (In re Wagner)*, 527 B.R. 416, 428-29 (10th Cir. BAP 2015) (quoting *United States Trustee v. Garland (In re Garland)*, 417 B.R 805, 810 (10th Cir. BAP 2009)).

(1) fails to exercise meaningful discretion, such as acting arbitrarily or not at all,

(2) commits an error of law, such as applying an incorrect legal standard or misapplying

the correct legal standard, or (3) relies on clearly erroneous factual findings."[18] Abuse of

discretion occurs when a "decision is arbitrary, capricious or whimsical or results in a

manifestly unreasonable judgment."[19] "As one court has put it, '[t]he question is not how

the reviewing court would have ruled, but rather whether a reasonable person could agree

with the bankruptcy court's decision; if reasonable persons could differ as to the issue,

then there is no abuse of discretion.'"[20]

## IV. Discussion

Sharpton raises two issues on appeal: (1) whether the Bankruptcy Court erred in

finding pursuant to § 548(a)(1) he fraudulently transferred assets of All Phase, LLC, and

(2) whether the Bankruptcy Court erred in denying Sharpton a discharge pursuant to

§ 727(a)(7). Therefore, in reviewing this appeal, we must analyze whether the

Bankruptcy Court made erroneous findings as to Sharpton's fraudulent intent and

whether it abused its discretion in basing the denial of discharge on those findings.

### a. Fraudulent Transfers Under § 548(a)(1)(A)

Section 548(a)(1)(A) provides in relevant part,

> The trustee may avoid any transfer . . . that was made or incurred on or
> within 2 years before the date of the filing of the petition, if the debtor
> voluntarily or involuntarily—

---

[18] *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015).
[19] *Lang v. Lang (In re Lang)*, 305 B.R. 905, 908 (10th Cir. 2004) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504-05 (10th Cir. 1994)).
[20] *Id.* (quoting *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 608 (6th Cir. 2000)).

> (A) made such transfer . . . with actual intent to hinder, delay, or
> defraud any entity to which the debtor was . . . indebted.[21]

Courts characterize the intent to hinder, delay, or defraud as actual fraud.[22]

Circumstances commonly present in situations where fraudulent activity is afoot are

referred to as "badges of fraud." Factors constituting badges of fraud include

> whether the transfer was to an insider; whether the debtor retained
> possession or control of the property after the transfer; concealment of the
> transfer; pending or threatened litigation against the debtor at the time of
> transfer; a transfer of substantially all of the debtor's assets; absconding by
> the debtor; removal or concealment of assets; reasonably equivalent value
> in exchange for the transfer; the debtor's insolvency at the time of the
> transfer; the proximity in time of the transfer to the incurrence of a
> substantial debt; and a transfer of substantial business assets to a lienor
> followed by a subsequent transfer of such assets to an insider of the
> debtor.[23]

If one or more of these factors are present, courts may infer fraudulent intent.[24]

The Bankruptcy Court determined at least four badges of fraud existed in this case.

The transfers (i) consisted of a large portion of All Phase LLC's assets, (ii) to an insider,

(iii) when All Phase LLC was insolvent, and (iv) in the wake of All Phase LLC's default

---

[21]     11 U.S.C. § 548(a)(1)(A).

[22]     *Lofstedt v. Kendall (In re Kendall)*, 491 B.R. 191, 2013 WL 1890660, at *4-5
(10th Cir. BAP May 7, 2013) (unpublished).

[23]     *Zubrod v. Kelsey (In re Kelsey)*, 270 B.R. 776, 782 (10th Cir. BAP 2001) (citing
*Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1338-39 (10th Cir. 1998)).

[24]     *In re Taylor*, 133 F.3d 1336, 1339 (10th Cir. 1998) (citing *Max Sugarman Funeral
Home, Inc. v. A.B.D. Invs.*, 926 F.2d 1248, 1254 (1st Cir. 1991)) ("[U]nder 11 U.S.C.
§ 548(a)(1), bankruptcy courts consider similar badges of fraud as evidence of actual
fraudulent intent."); *see also In re Rollaguard Sec., LLC*, 591 B.R. 895, 918 (Bankr. S.D.
Fla. 2018) ("The traditional badges of fraud represent examples of indicators of actual
fraudulent intent, culled from decades of case law. They are intended to be guideposts—
as opposed to ineluctable factors—in a court's analysis of the totality of the
circumstances to determine whether a transfer was made with actual fraudulent intent.").

on its obligations to Everest, which Sharpton personally guaranteed. In addition, Sharpton paid no value in exchange for the transfers. By themselves, these facts support finding fraudulent intent through circumstantial evidence. However, the Bankruptcy Court also found Sharpton had a general pattern of removing and dissipating at gambling venues All Phase LLC's assets that could have been paid to creditors, as additional evidence of fraudulent intent. Such actions contributed to the totality of the circumstances, which suggested Sharpton had a pattern of treating All Phase LLC's assets as his own and acted with fraudulent intent. We agree these factual findings support the ultimate finding of fraudulent intent through circumstantial evidence. Therefore, the Bankruptcy Court's finding of fraudulent intent is not clearly erroneous.

Sharpton raises three arguments on appeal. First, Sharpton asserts his testimony regarding his intent outweighs the circumstantial factors suggesting fraudulent intent. We disagree. Courts rely on circumstantial evidence to show fraudulent intent because the "[i]ntent to hinder, delay, or defraud creditors is rarely admitted by a debtor."[25] As a debtor seldom "lays bare his or her subjective intent, '[f]raudulent intent . . . may be established by circumstantial evidence, or by inferences drawn from a course of conduct.'"[26]

Furthermore, the Bankruptcy Court found Sharpton was not a credible witness. Review of a trial court's findings of fact "is 'significantly deferential,' and requires the

---

[25]     *In re Kelsey*, 270 B.R. at 782.
[26]     *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008) (quoting *Farmers Coop. Ass'n of Talmage, Kan. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982)).

appellate court to give due regard to the trial court's opportunity to judge witnesses' credibility."[27] Such deference is limited only when the bankruptcy court's determination "either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data."[28] This Court is also "required to 'view the evidence in the light most favorable to the [ ] court's ruling . . . and must uphold any [ ] court finding that is permissible in light of the evidence."[29] Sharpton does not point to any evidence tending to contradict the Bankruptcy Court's assessment of his credibility or otherwise negate the finding of actual intent to defraud. Accordingly, because we are required to defer to the Bankruptcy Court's assessment of Sharpton's credibility and other findings of fact, Sharpton's argument fails.

Next, Sharpton argues the Bankruptcy Court erred in finding fraudulent intent even though he relied on the advice of his bankruptcy counsel when making the transfers. The "advice of counsel" defense only applies when a debtor relies on the advice of counsel in good faith.[30] Accordingly, the advice of counsel is a factor relevant to whether

---

[27]    *Ibdaiwa v. Sawaged (In re Sawaged)*, No. CO-10-058, 2011 WL 880464, at *2 (10th Cir. BAP Mar. 15, 2011) (unpublished) (first quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 623 (1993) and then citing Fed. R. Bankr. P. 8013).

[28]    *In re Ford*, 492 F.3d 1148, 1154 (10th Cir. 2007) (quoting *Gillman v. Sci. Research Prods. (In re Mama D'Angelo)*, 55 F.3d 552, 555 (10th Cir. 1995)).

[29]    *Id.* (quoting *Exxon Corp. v. Gann*, 21 F.3d 1002, 1005 (10th Cir. 1994)).

[30]    *Davis v. Weddington (In re Weddington)*, 457 B.R 102, 114 (Bankr. D. Kan. 2011) (citing *Retz v. Samson (In re Samson)*, 606 F.3d 1189, 1199 (9th Cir. 2010)); *In re Miller*, 448 B.R. 551, 574 (Bankr. N.D. Okla. 2011) (citing *Cuervo v. Snell (In re Snell)*, 240 B.R. 728, 730-31 (Bankr. S.D. Ohio 1999)) ("The Court will not allow a debtor to hide

15

a debtor intentionally misled creditors or made an honest mistake.[31] Where a debtor's intent is clearly fraudulent, advice of counsel is not a defense.[32]

The Bankruptcy Court found Sharpton's reliance on counsel did not negate the numerous badges of fraud that existed in the case. Further, Sharpton's prior counsel passed away in 2019, and while he could not be impeached on the issue, the Bankruptcy Court found it difficult to believe an attorney would advise Sharpton to disregard legal formalities of a limited liability company and make the transfers. The Bankruptcy Court also cited Sharpton's failure to cooperate in the discovery process, general lack of candor, and desire to prevent investigation of his financial affairs as additional circumstances suggesting the intent to delay, hinder, or defraud All Phase LLC's creditors. Furthermore, although it was not the object of the fraudulent transfer claims, the Bankruptcy Court found Sharpton's use of All Phase LLC's cash to support his gambling habit as indicative of "a general pattern of removing and dissipating All Phase LLC's assets."[33] The overwhelming evidence that Sharpton transferred hundreds of thousands of dollars from All Phase LLC to cover his personal expenses, including his gambling habit, supports

behind advice of counsel if he or she knows that the purpose of a transfer is to hinder or delay creditors.").

[31] *See Rajala v. Majors (In re Majors)*, 330 B.R. 880, 2005 WL 2077497, at *3 (10th Cir. BAP. Aug. 29, 2005) (unpublished) (explaining the advice of counsel sheds light on "whether the [d]ebtor made a mistake or whether she knowingly cheated her creditors by withholding valuable assets").

[32] *See First Nat'l Bank, Larned v. Davison (In re Davison)*, No. KS-04-013, 2004 WL 2852352, at *4, n.3 (10th Cir. BAP June 29, 2004) (unpublished)  (quoting *Hibernia Nat'l Bank v. Perez*, 124 B.R. 704, 710 (E.D. La. 1991)) ("The advice of counsel is not a defense when it is transparently plain that the property should be scheduled.").

[33] *Manchester v. Sharpton (In re All Phase Roofing & Constr., LLC)*, No. 17-01070-SAH, 2020 WL 374357, at *15 (Bankr. W.D. Okla. Man. 17, 2020) (unpublished).

these findings. As such, the Bankruptcy Court's findings related to the defense of the advice of counsel were not clearly erroneous.

Finally, Sharpton argues the Bankruptcy Court erred in finding fraudulent intent because the assets transferred lacked any equity and resulted in no further depletion or diminution of All Phase LLC's estate, and because he scheduled the same unsecured debt in both the All Phase LLC and in his personal bankruptcy cases. As such, Sharpton argues he did not have fraudulent intent because no creditors were harmed by the transfers. If the Bankruptcy Court's findings and conclusions were made pursuant to § 548(a)(1)(B), we might agree with Sharpton that no diminution or depletion of the estate could preclude a fraudulent transfer judgment.[34] However, the Bankruptcy Court found the transfers to be actually fraudulent pursuant to § 548(a)(1)(A). Actual harm to creditors is not an element of a claim under § 548(a)(1)(A).[35] Nevertheless, it is a factor that can be considered in making a determination regarding actual fraudulent intent under § 548(a)(1)(A).[36]

---

[34] Section 548(a)(1)(B) allows avoidance of constructively fraudulent transfers, or those that are made for less than reasonably equivalent value. One factor considered under a constructively fraudulent analysis is whether the debtor was insolvent at the time or became insolvent as a result of the transfers. *LTF Real Estate Co. v. Expert S. Tulsa, LLC (In re Expert S. Tulsa, LLC)*, 522 B.R. 634, 651-52 (10th Cir. BAP 2014).

[35] *Brown v. Third Nat'l Bank (In re Sherman)*, 67 F.3d 1348, 1355 n.6 (8th Cir. 1995); *Kaler v. Vasvick (In re Vasvick)*, 604 B.R. 810, 823–24 (Bankr. D.N.D. 2019); *Krudy v. Scott (In re Scott)*, 227 B.R. 834, 843 (Bankr. S.D. Ind. 1998). See also 2 Bankr. Law Manual § 9:33 (5th ed. 2020) ("[P]roof of actual harm to one or more creditors or diminution of the estate by virtue of fraudulent transfer need not be shown under [§ 548(a)(1)(A)].").

[36] *In re Galbreath,* No. 99-60517, 2003 WL 26119288, at *12 (Bankr. S.D. Ga. Aug. 27, 2003).

The Bankruptcy Court found that shortly after All Phase LLC defaulted on its loan from loan Everest, Sharpton caused All Phase LLC to transfer its assets to him for no consideration, including the Transferred Assets, equipment and inventory as part of his plan for All Phase LLC to cease doing business in December 2016 and for Sharpton thereafter to continue to operate the same business as a sole proprietorship. The Bankruptcy Court found that Sharpton took these actions with the intent to hinder, delay or defraud All Phase LLC's unsecured creditors, notwithstanding that the assets were fully encumbered, so Sharpton could continue to use the assets to produce income. Sharpton then used a substantial portion of that income, that could have been used to pay creditors, at gambling venues. Furthermore, Sharpton's testimony does not suggest he subjectively considered the impact of the lack of equity in the Transferred Property prior to making the transfers.[37] Under the circumstances of this case, the lack of equity in the Transferred Property does not render the Bankruptcy Court's ultimate finding of fraudulent intent clearly erroneous.

### b. Denial of Discharge

Section 727(a)(2) denies a discharge to any debtor who, "with intent to hinder, delay, or defraud a creditor . . . has . . . transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the" petition date.[38] The

---

[37] Sharpton repeatedly testified he re-titled the Transferred Property because his bankruptcy counsel advised him to make the transfers, *Tr.* at 255, 257-59, *in* Appellant's App. at 452, 454-56, and that he considered All Phase LLC and himself to be one and the same. *Tr.* at 39, 223, 225, 288 *in* Appellant's App. at 236, 420, 422, 485.

[38] 11 U.S.C. § 727(a)(2).

18

Tenth Circuit explains in order "to deny a discharge under § 727(a)(2), a court must find *actual* intent to defraud creditors."[39] As in cases under § 548(a)(1)(A), "such intent may be established by circumstantial evidence or inferences drawn from a course of conduct."[40]

"Section 727(a)(7) denies a discharge to a debtor who: (1) on or within one year before the [petition date] . . . , (2) commits any of the objectionable acts specified in subsection 727(a)(2) . . . , (3) in connection with *another* case concerning an *insider*."[41] "Thus, if the debtor engages in objectionable conduct in a case involving a . . . corporation of which the debtor is an officer, director or controlling person, the debtor may be denied a discharge in the debtor's own case."[42]

In denying Sharpton's discharge, the Bankruptcy Court concluded that § 727(a)(2)(A)'s objection to discharge provision and § 548(a)(1)(A)'s actual fraudulent transfer provision have the same proof of intent requirement – both require proof actual intent to hinder, delay or defraud creditors. Applying principles of collateral estoppel (also known as issue preclusion), the Bankruptcy Court found that its prior adjudication of Sharpton's intent to hinder, delay, or defraud under § 548(a)(1)(A) with respect to the

---

[39]     *In re Carey*, 938 F.2d 1073, 1077 (10th Cir. 1991) (first citing *In re Bowyer*, 916 F.2d 1056, 1059 (5th Cir. 1990), and then citing *In re Smiley*, 864 F.2d 562, 566 (7th Cir. 1989)).

[40]     *Weston v. Goss*, 69 F.3d 549, 1995 WL 628125, at *1 (10th Cir. Oct. 26, 1995) (unpublished) (citing *Farmers Co-op v. Ass'n v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982)).

[41]     Collier on Bankruptcy ¶ [727.10] (Richard Levin & Henry J. Sommer eds., 16th ed. 2020). Sharpton does not take issue with the Bankruptcy Court's determination of his status as an insider of All Phase LLC.

[42]     *Id.* (citing cases from multiple jurisdictions for support).

19

transfers of the Transferred Property was preclusive of the intent requirement under § 727(a)(2)(A) with respect to those transfers. Because § 548(a)(1)(A) and § 727(a)(2) both require proving a transfer of property is made with the intent to hinder, delay, or defraud a creditor, [43] we find no error in the Bankruptcy Court's reliance on its findings under § 548(a)(1)(A). [44]

Addressing the denial of his discharge, Sharpton repeats his argument assigning error to the Bankruptcy Court's finding he acted with intent to hinder, delay, or defraud creditors. Again, Sharpton relies on testimony about his intent when transferring the assets from All Phase LLC to himself to argue Manchester failed to meet her burden of proof. The Bankruptcy Court found "the transfers were (i) of substantially all of All Phase LLC's assets (in the aggregate) (ii) to an insider (iii) at the time All Phase LLC was insolvent (iv) following default on a debt with respect to which [Sharpton] had

---

[43]     *Zubrod v. Keffer (In re Keffer)*, 307 B.R. 731, 2004 WL 632875, at \*3, n.4 (10th Cir. BAP Mar. 26, 2004) (unpublished) (explaining "both Bankruptcy Code sections 548(a)(1)(A) and 727(a)(2) require a showing of actual intent."); *Gepner v. Kidd (In re Kidd)*, No. 11-05291, 2015 WL 6437480, at \*6, n.30 (10th Cir. BAP Oct. 23, 2015) (unpublished) (same).

[44]     *See, e.g. Cohen v. Bucci,* 103 B.R. 927, 930 (N.D.Ill.1989), *aff'd,* 905 F.2d 1111 (7th Cir.1990) (affirming bankruptcy court's application of collateral estoppel to claim objecting to discharge under § 727(a)(2)(A) based on prior adjudication of debtor's intent to hinder, delay, or defraud under § 548(a)(1); "the issue of intent under Section 727(a)(2)(A) is identical to the issue of intent under Section 548(a)(1)."); *Guttman v. Fabian (In re Fabian),* 458 B.R. 235, 264 (Bankr. D.Md. 2011), *aff'd,* 475 B.R. 463 (D.Md. 2012), *aff'd,* 491 Fed.Appx. 420 (4th Cir.2012) (same); *Krudy v. Hoetmer (In re Hoetmer),* No. 12–50038, 2012 WL 4482387, \*2 (Bankr. S.D.Ind. Sept. 26, 2012) (finding, based on the identical language in § 727(a)(2)(A) and § 548(a)(1)(A), that "proof of intent under both sections is the same.") (citation omitted)).

20

signed a confession of judgment."[45] Although only the Transferred Property was the subject of the § 548(a)(1)(A) claims, review of the Bankruptcy Court's ruling suggests the court also found fraudulent intent with regard to the transfer of All Phase LLC's other assets.[46] These findings align with the badges of fraud articulated by the Tenth Circuit[47] and justify the Bankruptcy Court's ultimate finding Sharpton acted with "actual intent to hinder, delay, or defraud."[48] Furthermore, a debtor's unsupported assertions of honest intent generally do not overcome the inference of fraudulent behavior.[49] Therefore, the badges of fraud, coupled with the Bankruptcy Court's assessment of Sharpton's credibility as a witness, support the Bankruptcy Court's decision to deny Sharpton's discharge.

Sharpton again argues he lacked the intent to hinder, delay, or defraud creditors of All Phase LLC because his actions resulted in no harm to All Phase LLC's secured or unsecured creditors. Sharpton's assessment of harm is based on the conclusion that even if he had not transferred the property, All Phase LLC's unsecured creditors would still have received nothing. Yet, the Bankruptcy Court found Sharpton was not a credible

---

[45]   *Manchester v. Sharpton (In re Sharpton)*, No. 18-01038-SAH, 2020 WL 373097, at *11 (Bankr. W.D. Okla. Jan. 17, 2020).
[46]   *Manchester v. Sharpton (In re All Phase Roofing & Constr., LLC)*, No. 17-01070-SAH, 2020 WL 374357, at *15 (Bankr. W.D. Okla. Man. 17, 2020) (unpublished) ("[Sharpton's] withdrawals from All Phase LLC's bank accounts for his gambling purposes represent a general pattern of removing and dissipating All Phase LLC's assets . . . and are indicative of fraudulent transfers.").
[47]   *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1338-39 (10th Cir. 1998).
[48]   *In re Sharpton*, 2020 WL 373097, at *12.
[49]   *CAGO, Inc. v. Slade (In re Slade)*, 471 B.R. 626, 640 (Bankr. D.N.M. 2012) (citations omitted); *Smith v. Cooper (In re Cooper)*, 399 B.R. 637, 647 (Bankr. E.D. Ark. 2009) (citations omitted).

21

witness and detailed evidence of Sharpton's repeated cash transfers. These facts allowed the Bankruptcy Court to reach the reasonable inference Sharpton intended to remove any of All Phase LLC's assets that could have been used to pay creditors.[50] The record supports this inference. Furthermore, as noted above, Sharpton's testimony does not suggest he subjectively considered the impact of the lack of equity in the Transferred Property prior to making the transfers.[51] Accordingly, there is no error.

Additional facts in the record support the Bankruptcy Court's decision to deny Sharpton's discharge. Sharpton admitted to making "withdrawals of enormous sums of cash from All Phase LLC's bank accounts primarily at gambling venues."[52] After transferring All Phase LLC's assets to himself, Sharpton "continued the same business without interruption as a sole proprietor."[53] Sharpton also collected on All Phase LLC's outstanding contracts, personally using the funds after the company's purported dissolution.[54] Further, Sharpton's repeated testimony that he and All Phase LLC were one in the same suggests Sharpton felt entitled to All Phase LLC's assets to the detriment of creditors. The conversion of assets and personal use thereof supports the Bankruptcy Court's finding Sharpton acted "with actual intent to hinder, delay, or defraud All Phase

---

[50]    *In re Sharpton*, 2020 WL 373097, at *12.
[51]    *See* note 37, supra.  Sharpton repeatedly testified he re-title the Transferred Property because his bankruptcy counsel advised him to make the transfers. *Tr.* at 255, 257-59, *in* Appellant's App. at 452, 454-56.
[52]    *In re Sharpton*, 2020 WL 373097, at *12.
[53]    *Id.* at *11.
[54]    *Id.* at *7.

LLC's creditors."[55] Therefore, the Bankruptcy Court's denial of Sharpton's discharge was not an abuse of discretion.

## V.      Conclusion

The benefit of the bargain of complying with the rigorous process of filing a bankruptcy petition is a discharge. However, "the opportunity for 'a completely unencumbered new beginning' is reserved only for 'the honest but unfortunate debtor.'"[56] Because the Bankruptcy Court's finding that Sharpton transferred property from All Phase LLC to himself with fraudulent intent is not clearly erroneous, the court did not abuse its discretion in denying Sharpton's discharge. Accordingly, the judgments of the Bankruptcy Court finding Sharpton fraudulently transferred property pursuant to § 548(a)(1)(A) and denying Sharpton's discharge pursuant to § 727(a)(2), (a)(7) are AFFIRMED.

---

[55]     *Id.* at *12.

[56]     *Standiferd v. United States Tr.*, 641 F.3d 1209, 1212 (10th Cir. 2011) (quoting *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)).